Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Gladys Rivera Padilla y Otras; Carmen R. Cotto y Otras; Iraida Erazo Ortega y Sandra Rivera Bauzá<br><br>        Recurridas<br><br>              v.<br><br>Directora Administrativa de los Tribunales<br><br>        Peticionaria<br>Gladys Rivera Padilla, Iraida Erazo Ortega, María E. Miranda Pérez, María L. Trinidad Morales, Elsie M. Oliveras Martínez, Gladys Castillo Rodríguez, Minerva Colón Nieves, Ramonita Rivera Tarraza, Carmen M. Meléndez Pérez, Denise Marín Rodríguez,<br>María del R. Carrión Vega, Sandra Rivera Bauzá, Elizabeth Mulero Maldonado y María del C. Barroso Hernández<br><br>        Recurridas<br><br>              v.<br><br>Directora Administrativa de los Tribunales<br><br>        Peticionaria | Certiorari<br><br>2013 TSPR 87<br><br>189 DPR ____ |

Número del Caso: CC-2008-1128
               Cons.
               CC-2010-620


Fecha: 8 de agosto de 2013


CC-2008-1128

Abogado de la Parte Peticionaria:

       Lcdo. Jorge J. Puig Jordán


Abogados de la Parte Recurrida:

       Lcdo. Miguel A. Negrón Matta
       Lcdo. Julio Díaz Rosado

**CC-2010-620**

Abogados de la Parte Peticionaria:

      Lcdo Luis Rivera Martínez
      Lcdo. Jorge J. Puig Jordán

Abogado de la Parte Recurrida:

      Lcdo. Miguel A. Negrón Matta

Materia: Derecho Constitucional – Debido proceso de Ley; aplicación del derecho constitucional de igual paga por igual trabajo. (Art. I Secc. 16, Constitución del ELA de Puerto Rico) a los Planes de Clasificación y Retribución de los Reglamentos de Personal de la Rama Judicial

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Gladys Rivera Padilla y Otras; Carmen R. Cotto y Otras; Iraida Erazo Ortega y Sandra Rivera Bauzá<br><br>Recurridas<br><br>v.<br><br>Directora Administrativa de los Tribunales<br><br>Peticionaria | CC-2008-1128 | |
| Gladys Rivera Padilla, Iraida Erazo Ortega, María E. Miranda Pérez, María L. Trinidad Morales, Elsie M. Oliveras Martínez, Gladys Castillo Rodríguez, Minerva Colón Nieves, Ramonita Rivera Tarraza, Carmen M. Meléndez Pérez, Denise Marín Rodríguez, María del R. Carrión Vega, Sandra Rivera Bauzá, Elizabeth Mulero Maldonado y María del C. Barroso Hernández<br><br>Recurridas<br><br>v.<br><br>Directora Administrativa de los Tribunales<br><br>Peticionaria | Cons.<br><br><br><br><br><br><br><br><br><br><br><br><br><br>CC-2010-0620 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 8 de agosto de 2013.

En esta ocasión debemos examinar ciertos planteamientos incoados al amparo del debido proceso de ley, los reglamentos de personal de la Rama Judicial y el principio constitucional de *igual paga por igual trabajo*.

En concreto, habremos de resolver si la Oficina de Administración de Tribunales ("OAT") violó las disposiciones legales indicadas al reducir los sueldos de un grupo de secretarias de la Rama Judicial en aras de corregir un supuesto error administrativo cometido al implantar el Plan de Clasificación y Retribución de la Rama Judicial de 1998.

Teniendo presente la controversia antes señalada, pasemos a exponer el marco fáctico que origina los recursos consolidados que nos ocupan.

I.

**A. CC-2010-0620:**[1]

Entre junio y noviembre de 1998, un grupo de secretarias auxiliares de la Rama Judicial fueron ascendidas al puesto de secretarias de servicios de sala ("secretarias ascendidas"). Como resultado de estos ascensos, las secretarias ascendidas se beneficiaron de la aplicación del Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal de la Rama Judicial ("Reglamento de la Administración del Sistema de Personal"). El texto de este articulado, según estaba

---

[1] Las peticionarias en el caso de epígrafe son: Gladys Rivera Padilla, Iraida Erazo Ortega, María E. Miranda Pérez, María L. Trinidad Morales, Elsie M. Oliveras Martínez, Gladys Castillo Rodríguez, Minerva Colón Nieves, Ramonita Rivera Tarraza, Carmen M. Meléndez Pérez, Denise Marín Rodríguez, María Del R. Carrión Vega, Sandra Rivera Bauzá, Elizabeth Mulero Maldonado y María del C. Barroso Hernández.

reglamentado al momento de conferirse los ascensos,[2] permitió que el salario asignado a las secretarias ascendidas en su nueva escala retributiva reflejara el número de pasos[3] que adquirieron en su pasada escala salarial, y no sólo el salario más alto devengado por éstas bajo su antiguo puesto. De tal manera, las secretarias ascendidas recibieron un sueldo que sobrepasaba el tipo mínimo de su nueva escala salarial, en función al número de pasos que alcanzaron en su antigua escala retributiva y con independencia de cualquier otro criterio salarial.

Coetáneo a lo anterior, el 31 de agosto de 1998, la Rama Judicial aprobó un Plan de Clasificación y Retribución ("Plan"), con efecto retroactivo al 1 de julio de 1998. Al implantarse el nuevo Plan y reajustarse los salarios de forma correspondiente, las secretarias ascendidas obtuvieron un salario mayor que aquel devengado por las secretarias de servicios de sala que habían desempeñado el referido cargo desde mucho antes de

---

[2]Este artículo disponía lo siguiente al momento de otorgarse los ascensos en disputa:

> También recibirán una retribución sobre el mínimo los funcionarios y empleados que sean ascendidos, **aumentándose el mismo número de pasos que sobre el mínimo de la escala anterior tuvieran.** (Énfasis nuestro.) 4 L.P.R.A. Ap. XIII, R.10.4(b) (versión de 21 de octubre de 1994).

[3]Un paso representa un incremento de sueldo que corresponde a un nivel o tipo intermedio de determinada escala salarial. Véase, Nigaglioni v. Depto. de Salud, 149 D.P.R. 180, 206-207, n.1 (1999), citando a, Aponte v. Srio. de Hacienda, E.L.A., 125 D.P.R. 610, 615 (1992).

implementarse el Plan o de otorgarse los ascensos en disputa ("secretarias originales"). Tal situación ocurrió debido a que las secretarias ascendidas se beneficiaron de la aplicación del Art. 10.4(b), *supra*, previo a la entrada en vigor del Plan. Las secretarias originales, por no ser objeto de un ascenso, no se beneficiaron del Art. 10.4(b), *supra,* antes de implantarse el Plan. Éstas sólo recibieron una asignación dentro de la nueva escala retributiva diseñada para el puesto de secretarias de servicios de sala, que garantizó, como mínimo, un salario equivalente al salario más alto que percibieron al amparo de la pasada escala retributiva.

Posterior a la implementación del Plan, esta Curia, mediante una Resolución adoptada el 19 de marzo de 1999, enmendó el Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, *supra*.[4] Véase, Resolución del Tribunal Supremo de Puerto Rico, Res. Núm. EP-99-01. Con la referida enmienda, se eliminó la

---

[4]Por causa de dicha enmienda, el articulado indicado ahora lee de la siguiente manera:

> Todo empleado que ascienda percibirá retribución al tipo mínimo de la escala correspondiente, excepto que si el aumento resultante fuere menor al equivalente a un paso sobre el sueldo del empleado en la escala donde estaba ubicada la clase de puesto antes del cambio, el mismo se aumentará y se ajustará al tipo inmediato superior al subsiguiente, de manera que el incremento a recibir sea mayor a lo que hubiera recibido de habérsele concedido un aumento de sueldo equivalente a un paso en la escala antes del cambio. 4 L.P.R.A. Ap. XIII, R.10.4(b) (2012).

posibilidad experimentada por las secretarias ascendidas, mediante la cual un empleado ascendido podía recibir un reconocimiento del número de pasos por años de servicio o por mérito que adquirió en su pasada escala salarial –y no sólo el salario máximo adquirido por dichos pasos– al momento de fijarse su sueldo dentro de su nueva escala salarial. No obstante el cambio señalado, las secretarias originales continuaron recibiendo un salario inferior al de las secretarias ascendidas, a pesar que aquellas habían ocupado el puesto de secretarias de sala por mucho más tiempo que estas últimas. Ello, pues, las secretarias ascendidas continuaron beneficiándose del texto del Art. 10.4(b), *supra*, según éste estaba redactado antes de la enmienda explicada.

La perpetuación de esta diferencia en sueldo provocó que las secretarias originales acudieran ante la OAT para solicitar que sus sueldos fuesen equiparados con el salario devengado por las secretarias ascendidas. Fundamentaron su reclamo en el argumento constitucional y reglamentario de *igual paga por igual trabajo*. Alegaron que era improcedente en derecho que las secretarias ascendidas gozaran de mayor remuneración que las secretarias originales, a pesar que ambos grupos de secretarias ejercen las mismas funciones y responsabilidades. La Directora de la OAT ("Directora") denegó la solicitud de las secretarias originales.

Ante la denegatoria de la Directora, las secretarias originales recurrieron en alzada ante la Junta de Personal de la Rama Judicial ("Junta"). Las querellas de las secretarias originales fueron adjudicadas por la Junta en una Resolución con fecha del 14 de septiembre de 2004. En esencia, la Junta resolvió que los salarios de las secretarias originales debían ser equiparados con aquellos devengados por las secretarias ascendidas. Sostuvo su decisión en el principio de *igual paga por igual trabajo* incorporado en el Art. II, Sec. 16 de la Constitución de Puerto Rico, el Art. 10 del Reglamento de Administración de Personal, *supra*, y la política salarial del Plan. La OAT no solicitó la reconsideración de la decisión de la Junta, ni presentó un escrito de revisión administrativa ante el Tribunal de Apelaciones.

El 8 de octubre de 2004, la OAT pretendió dar cumplimiento a lo ordenado en la Resolución de la Junta. Al así obrar, la OAT concedió a las secretarias originales aquellos pasos necesarios para que cada una recibiese un salario proporcional al sueldo recibido por **una** de las secretarias ascendidas, el cual equivalía a una compensación de $1,841 mensuales. En respuesta a lo anterior, el 21 de octubre de 2004, las secretarias originales cursaron a la Junta una moción titulada "Moción sobre cartas notificadas el 8 de octubre de 2004", en la cual se oponían a la forma en que la OAT implementó la Resolución de la Junta del 14 de septiembre de 2004.

Esencialmente, las secretarias originales arguyeron que la equiparación de sueldos realizada por la OAT estaba errada. Ante ello, solicitaron una vista evidenciaria para exponer cómo debía computarse la misma.

Posteriormente, las secretarias originales presentaron varias mociones en las cuales argüían que equiparar los sueldos entre ambos grupos de secretarias exigía que se les reconociese a las secretarias originales el número total de pasos alcanzados por ellas antes de implantarse el Plan. Según las secretarias originales, el equiparar los sueldos de todas las secretarias originales al de una de las secretarias ascendidas, no evita que muchas secretarias ascendidas continúen devengando sueldos superiores a un gran número de secretarias originales con mayor antigüedad en el puesto de secretarias de servicios de sala.

En vista de las mociones instadas, el 21 de octubre de 2005, la Junta otorgó la audiencia solicitada. La oficial examinadora que presidió la misma emitió un informe a la Junta, en el cual concluyó que procedía reconocerle a las secretarias originales los pasos por mérito y servicio que habían adquirido previo a la implantación del Plan, de la misma forma que las secretarias ascendidas se beneficiaron del reconocimiento de los pasos que habían adquirido en la escala salarial que les aplicaba previo a su ascenso. La oficial examinadora descansó su recomendación en el principio de

*igual paga por igual trabajo*, según éste fue interpretado en la Resolución de la Junta del 14 de septiembre de 2004.

En el ínterin, y en un caso distinto al de autos, el 10 de abril de 2006, la OAT sometió ante la Junta una moción en cumplimiento de una orden, mediante la cual anunciaba que se proponía dejar sin efecto el aumento concedido a las secretarias ascendidas y a las secretarias originales, con el propósito de supuestamente corregir la desigualdad salarial que había dado génesis a la controversia que nos ocupa. Específicamente, la OAT planteó que dejaría sin efecto los aumentos salariales resultantes de "la aplicación de las disposiciones del Artículo 10.4 del Reglamento" de la Administración del Sistema de Personal, *supra*.[5] En respuesta a esta moción, el 31 de mayo de 2006, la Junta le concedió a las secretarias originales un término de 10 días para que mostraran causa por la cual no debía dejarse sin efecto el informe y la recomendación de la oficial examinadora. Las secretarias originales no comparecieron en el término indicado.

Así las cosas, el 26 de junio de 2006, la Directora de la OAT le envió una misiva a cada una de las secretarias originales y ascendidas, mediante la cual les notificó que efectivo el 1 de julio de 2006, se dejarían sin efecto los aumentos salariales que le fueron concedidos por la Junta mediante la Resolución del 14 de

_____

[5]Apéndice, Petición de *certiorari*, pág. 101.

septiembre de 2004. La OAT se limitó a aseverar que, luego de un estudio realizado en el contexto de un proceso administrativo pendiente ante la Junta, tales aumentos eran improcedentes en Derecho. El 3 de julio de 2006, las secretarias originales acudieron ante la Junta e impugnaron la determinación de la OAT mediante un escrito titulado "Moción solicitando auxilio de jurisdicción". Entre otros planteamientos, aseveraron que la acción objetada representaba una violación a su derecho al debido proceso de ley, ya que nunca se les proveyó una vista, previo a sufrir una reducción del salario conferido por virtud de la Resolución de la Junta del 14 de septiembre de 2004.

El 20 de septiembre de 2006, la Junta resolvió las mociones indicadas. En su Resolución, la Junta concluyó que la acción de la OAT era procedente en Derecho. Fundamentó su decisión en su entendimiento de que la acción de la OAT constituía una corrección legítima de un alegado error administrativo. Según la Junta, el referido error administrativo se debió a la implementación del Plan sin la concurrente enmienda del Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, *supra*, lo que entendió que creó una norma de ascenso incompatible con el Plan. De acuerdo a la Junta, la enmienda del referido articulado en el 1999 trajo una norma de ascenso afín al Plan y corrigió el alegado error administrativo. Por tal motivo, la Junta razonó que la

acción de la OAT de reducir todo aumento conferido al amparo del Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, *supra*, previo a su enmienda, constituye una rectificación del alegado error administrativo, el cual quitó la base fáctica que dio pie a la disparidad de sueldos entre las secretarias ascendidas y las secretarias originales. Además, la Junta aseveró que dicho error administrativo no creó un estado de derecho que obligara a la OAT ni impidiera su debida corrección.

Inconforme con la determinación de la Junta, y luego de varios trámites interlocutorios, el 16 de enero de 2007, las secretarias originales presentaron un recurso de revisión administrativa ante el Tribunal de Apelaciones. En esencia, volvieron a argüir que la reducción de sus salarios constituyó una lesión a su derecho a un debido proceso de ley, según éste es protegido por la Constitución de Puerto Rico y la Constitución federal.

El 11 de mayo de 2007, la OAT presentó una moción de desestimación ante el foro apelativo intermedio. En esencia, ésta impugnó la validez de la notificación del recurso de revisión administrativa, indicando que en el caso de autos las secretarias originales notificaron su escrito a la OAT y a la Junta, mas omitieron notificar su recurso al licenciado que representaba a la OAT, argumentando así que su escrito no quedó perfeccionado dentro del término provisto para ello por el Reglamento

del Tribunal de Apelaciones. En respuesta, las secretarias originales presentaron un escrito en oposición, en el cual plantearon que cumplieron con la notificación indicada, ya que el abogado de la OAT, al asumir la representación legal de su cliente, informó como suya la dirección de la OAT y nunca presentó una moción notificando un cambio de dirección.

Así las cosas, el 23 de julio de 2007, la OAT presentó su oposición al recurso administrativo de las secretarias originales. En ésta, la OAT, entre otros argumentos, planteó que las secretarias originales no sufrieron una violación de su derecho al debido proceso de ley. Ello, pues, no tenían derecho a una vista previo a la Resolución que redujo sus aumentos salariales y, de tenerlo, nunca solicitaron la misma. Según la OAT, ésta salvaguardó el derecho de las secretarias originales a un debido proceso de ley al notificarle de su derecho a apelar su decisión ante la Junta, lo cual las secretarias hicieron. Además, arguyó que la Junta hizo lo propio al ordenar a las secretarias ascendidas el 31 de mayo de 2006, a que mostraran causa por la cual no debía dejarse sin efecto la Resolución del 14 de septiembre de 2004. Asimismo, argumentaron que el proceso administrativo celebrado ante la Junta les otorgó a las secretarias originales una oportunidad justa y equitativa a ser oídas y a expresarse.

Finalmente, la OAT alegó que su acción sólo corrigió un error administrativo provocado por la omisión de enmendar el Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, *supra*, antes de implantar el Plan. Según la OAT, el error indicado no generó un interés propietario a favor de las secretarias originales y nada impedía corregirlo. Descansando en éstas y otras alegaciones, sostuvo que no tenían reclamo alguno al amparo de la protección constitucional a un debido proceso de ley.

El 22 de diciembre de 2009, el Tribunal de Apelaciones emitió una Sentencia disponiendo del recurso presentado por las secretarias originales. En su dictamen, el foro apelativo intermedio concluyó que las secretarias originales tenían un interés propietario respecto a los aumentos que le fueron conferidos por virtud de la Resolución de la Junta del 14 de septiembre de 2004. Ante ello, determinó que la Junta estaba obligada a conferirle una audiencia previo a haber ordenado que los aumentos que gozaban les fuesen quitados. Además, ordenó a la Junta a analizar si la OAT, en efecto, había cometido un error de derecho o un error de hecho al momento de implantar el Plan sin haber enmendado concurrentemente el Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, *supra*. El tribunal *a quo* no atendió la moción de desestimación presentada por la OAT.

Inconformes con el dictamen del Tribunal de Apelaciones, el 16 de julio de 2010, la OAT compareció ante nos mediante una petición de *certiorari*. En su recurso, la OAT le imputa al foro apelativo intermedio haber errado al: (1) no desestimar la causa de acción de las secretarias originales, según la OAT lo solicitó en su moción de 11 de mayo de 2007; (2) determinar que la Junta violentó el derecho a un debido proceso de ley de las secretarias originales al no celebrar una audiencia para determinar si, en efecto, la OAT cometió o no un error administrativo; (3) resolver que las secretarias originales tienen un interés propietario respecto a los aumentos salariales en controversia; y, (4) disponer que la OAT estaba impedida de corregir el supuesto error administrativo sin que la Junta determinara antes si el referido error era uno de hecho o derecho.

## B. <u>CC-2008-1128</u>:[6]

Por otra parte, el 12 de julio de 2006, las secretarias ascendidas[7] presentaron una querella ante la

---

[6]Las peticionarias en el caso de autos son: Ada R. Burgos Martínez, Mirnaly Agosto Ortiz, Yeisa Prado Lozada, Yesenia Reyes Filomeno, Ivonne Irrizary Quiles, Betzaida Santiago Vargas, Marta Pérez París, Gladys Rivera Padilla, María E. Miranda Pérez, María L. Trinidad Morales, Elsie M. Oliveras Martínez, Gladys Castillo Rodríguez, María E. Miranda Pérez, María L. Trinidad Morales, Elsie M. Oliveras Martínez, Gladys Castillo Rodríguez, Denise Marín Rodríguez, Elizabeth Mulero Maldonado, María del Carmen Barroso Hernández, Minerva Colón Nieves, Iraida Erazo Ortega y Sandra Rivera Bauzá.

[7]Amerita indicar que esta querella fue presentada por secretarias y oficinistas que fueron ascendidas a la posición de secretarias de servicios de sala y a otras

Junta. Ello en respuesta a la carta suscrita por la OAT el 26 de junio de 2006, en la cual se les notificó que sus sueldos serían reducidos, bajo el argumento de que se había cometido un error administrativo al implantar el Plan sin la concurrente enmienda del Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, *supra*. Esencialmente, y al igual que las secretarias originales, las secretarias ascendidas alegaron que la determinación de la OAT violentó su derecho al debido proceso de ley, al menoscabar su interés propietario sobre los ascensos en disputa. Además, arguyeron que el ascenso que les fue conferido al amparo del Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, *supra*, le correspondía por ser éste el estado de Derecho que existía al momento de implantarse el Plan. Ante ello, plantearon que la OAT violó los propios reglamentos de personal de la Rama Judicial. Esta querella fue consolidada con otras querellas que fueron presentadas por las secretarias originales el 6 de junio de 2006, en las cuales éstas impugnaban, nuevamente, la decisión de la OAT.

---

posiciones dentro del sistema uniforme de la Rama Judicial. Aunque la mayoría de las querellantes eran secretarias auxiliares que fueron ascendidas al puesto de secretarias de servicios de sala, somos conscientes que no todas las querellantes fueron ascendidas al referido puesto y no todas provinieron del puesto de secretarias auxiliares. Para fines de facilitar la discusión de los hechos del caso ante nos, ubicaremos a todas las peticionarias de este segundo caso bajo el calificativo de *secretarias ascendidas*.

El 28 de agosto de 2007, la OAT presentó una moción de desestimación sumaria en contra de las referidas querellas. En su moción, la OAT solicitó que, de acuerdo a la Resolución de la Junta del 20 de septiembre de 2006, la Junta desestimara las querellas de las secretarias ascendidas y originales (colectivamente "secretarias"), a raíz de que la OAT tenía potestad para corregir el error administrativo en controversia. Arguyó que la Resolución del 20 de septiembre de 2006 impedía el reclamo de las secretarias, a la luz de la doctrina de impedimento colateral por sentencia. Además, fundamentó su reclamo en una Sentencia emitida por el Tribunal de Apelaciones en un caso idéntico en su naturaleza,[8] en el cual el foro apelativo intermedio concluyó que la OAT actuó propiamente al corregir el alegado error administrativo. El 18 de diciembre de 2007, las secretarias se opusieron a la moción de la OAT.

Con la comparecencia de ambas partes, el 20 de febrero de 2008, la Junta emitió una Resolución. En ésta, dispuso que los planteamientos levantados por las secretarias originales en sus segundas querellas fueron adjudicados en su Resolución del 20 de septiembre de 2006. Ante ello, determinó que estas segundas querellas no procedían a base de la doctrina de impedimento colateral por sentencia. Respecto a las secretarias ascendidas, la

---

[8]Brunilda Rodríguez Colón v. Directora Administrativa de los Tribunales, KLRA0600847 y KLRA0600851, resuelto el 30 de abril de 2007.

Junta concluyó que éstas no albergaban un interés propietario sobre los aumentos en controversia, ya que éstos habían sido conferidos por virtud de un error administrativo cometido por la OAT al momento de implantar el Plan, el cual no creó un estado de derecho que obligara a la agencia ni impidiera su corrección. Para fundamentar su decisión, la Junta citó la decisión del Tribunal *a quo* esgrimida por la OAT en su moción de desestimación sumaria.

Inconforme con el dictamen administrativo, el 24 de marzo de 2008, las secretarias presentaron un recurso de revisión administrativa ante el Tribunal de Apelaciones. En su recurso, éstas le imputaron a la Junta haber errado por, entre otras cosas: (1) no concluir que el Art. 10.4(b) del Reglamento, *supra*, previo a ser enmendado en marzo de 1999, constituía el estado de Derecho al momento de otorgarse los aumentos en controversia, creando así un interés propietario exigible por las secretarias y oponible ante la OAT; y, (2) no celebrar una vista evidenciaria para dilucidar los méritos de las querellas presentadas por las secretarias, violentando así su derecho a un debido proceso de ley, previo a despojarles de los aumentos en disputa.

El 6 de mayo de 2008, la OAT se opuso al recurso de revisión administrativa instado por las secretarias. En su oposición, la OAT arguyó que las secretarias ascendidas no tenían un derecho a una vista evidenciaria, previo a la

privación de los aumentos que gozaban, ya que esos aumentos fueron conferidos por virtud de un error administrativo, el cual no creó un interés propietario ni impedía su corrección. Así, argumentó que las secretarias no sufrieron una violación de su derecho a un debido proceso de ley, sino que, al contrario, la Junta y la OAT le otorgaron suficientes oportunidades para ser escuchadas.

Habida cuenta de las posiciones de ambas partes, el 20 de noviembre de 2008, el Tribunal *a quo* emitió su dictamen. En lo pertinente, el Tribunal de Apelaciones resolvió que la Junta debió de haber celebrado una vista para dilucidar si los aumentos percibidos por las secretarias ascendidas fueron producto de un error de hecho o un error de derecho. Respecto al reclamo de las secretarias originales, el Tribunal *a quo* determinó que éste estaba pendiente ante otro panel del Tribunal de Apelaciones y que el mismo no sería adjudicado en esta sentencia. Cónsono con lo anterior, el foro apelativo intermedio revocó la decisión de la Junta en cuanto a su desestimación de las querellas de las secretarias ascendidas y devolvió el caso a ésta para que celebrara una vista.

Inconforme con la determinación del Tribunal de Apelaciones, el 23 de diciembre de 2008, la OAT acudió ante nos mediante un recurso de *certiorari*. En su recurso, la OAT alega que el foro apelativo intermedio erró al

resolver que la Junta debió de celebrar una vista para determinar si el aumento percibido por las secretarias ascendidas fue producto de un error de hecho o un error de derecho, antes de desestimar las querellas de éstas.

Luego de consolidar el caso ante nos con el pleito instado por las secretarias originales (CC-2010-0620), el 30 de junio de 2009 expedimos los autos solicitados. Contando con la comparecencia de todas las partes, pasamos a exponer el marco jurídico aplicable a los casos que nos ocupan y a adjudicar las controversias correspondientes, según lo dicta el Derecho.

II.

Los casos ante nuestra consideración han generado múltiples argumentos de carácter procesal, los cuales han sido adjudicados a lo largo del tracto judicial. Sólo resta atender un último planteamiento preliminar levantado por la OAT, cuya disposición es imprescindible previo a considerar cualquier otro argumento en sus méritos. Concretamente, nos toca dirimir si el Tribunal de Apelaciones erró al no desestimar el recurso de revisión administrativa de las secretarias originales por éstas alegadamente no notificar su recurso al abogado de la OAT. Veamos.

**A. La notificación adecuada y oportuna del recurso de revisión administrativa al abogado de la OAT**

La Regla 58 (B)(1) del Reglamento del Tribunal de Apelaciones, provee lo siguiente:

>La parte recurrente notificará el escrito de revisión debidamente sellado con la fecha y hora de su presentación a los abogados(as) de récord del trámite administrativo o, en su defecto, a las partes, así como a la agencia o al funcionario(a) administrativo(a) de cuyo dictamen se recurre, dentro del término para presentar el recurso, siendo éste un término de cumplimiento estricto. 4 L.P.R.A. Ap. XXII-B, R.58.

De la citada provisión legal, encontramos que existe un mandato reglamentario a que toda parte que interese presentar un recurso de revisión administrativa ante el Tribunal de Apelaciones, notifique el mismo al abogado de récord, dentro del término provisto en ley para ello. En su defecto, la parte recurrente puede notificar su recurso a las partes representadas por el abogado de récord. El requisito de notificar al abogado de la parte contraria es uno de cumplimiento estricto y no de carácter jurisdiccional.

Según lo hemos expresado en el pasado, este mandato reglamentario, al igual que los restantes requisitos del Reglamento del Tribunal de Apelaciones, "deben observarse rigurosamente". Arriaga v. F.S.E., 145 D.P.R. 122, 130 (1998). Véase, también, García Ramis v. Serrallés, 171 D.P.R. 250, 253 (2007). Ello se debe a que "no puede quedar 'al arbitrio de los abogados decidir qué disposiciones reglamentarias deben acatarse y cuándo'". Íd., citando a, Matos v. Metropolitan Marble Corp., 104 D.P.R. 122, 125 (1975).

En los casos ante nos, encontramos que las secretarias originales, al presentar su recurso de

revisión administrativa ante el Tribunal de Apelaciones, cumplieron con la Regla 58 (B)(1) del Reglamento del foro apelativo intermedio. Al examinar el expediente del caso, encontramos que el abogado de la OAT -el Lcdo. Luis R. Rivera Martínez- al presentar su moción asumiendo la representación legal de la OAT, informó que su dirección postal era la misma dirección que la de su cliente.[9] Fue precisamente a esta dirección postal -la de la OAT- que las secretarias originales notificaron su recurso administrativo. Ante ello, no encontramos violación alguna al requisito procesal señalado. Consecuentemente, el recurso de revisión administrativa de las secretarias originales quedó debidamente perfeccionado y no cabe hablar de su desestimación.

Teniendo presente que no existe escollo procesal alguno que nos impida examinar los méritos de los planteamientos levantados por las partes, pasemos a examinar el marco jurídico aplicable a los reclamos salariales incoados por las secretarias. De cara a ese esfuerzo, reconocemos que las partes han erguido su pedido al amparo del derecho constitucional al debido proceso de ley. No obstante, entendemos que la controversia ante nuestra consideración puede adjudicarse mediante la interpretación de los reglamentos de personal de la Rama Judicial, sin necesidad alguna de entrar en

_____

[9]Moción Asumiendo Representación Legal y Otros Extremos, pág. 2, Apéndice CC-2010-0620, págs. 166-167. Esta moción fue aceptada por la Junta el 24 de mayo de 2005, Íd., pág. 168.

consideraciones de carácter constitucional, más allá de lo necesario. Véase, Asociación Maestros v. Comisión, 159 D.P.R. 81, 85 (2003), n. 1; E.L.A. v. Aguayo, 80 D.P.R. 552 (1958).

Con ello en mente, y según lo expusimos anteriormente, enfocaremos nuestra mirada en determinar si las secretarias poseen un derecho reglamentario a cobrar el beneficio económico derivado de los pasos o tipos intermedios que alcanzaron en su antigua escala salarial, previo a la implantación del Plan de 1998. Por un lado, las secretarias ascendidas erigen su reclamo a la luz del Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, *supra*. Por otra parte, las secretarias originales hacen lo propio descansando en el principio general de *igual paga por igual trabajo* que articulan los reglamentos de personal de la Rama Judicial. Ante ello, procedemos a discutir algunos aspectos generales de la estructura normativa de personal que impera en la Rama Judicial para poder atender los reclamos de las secretarias.

### III.

#### A. El sistema de personal de la Rama Judicial

La Sec. 7 del Art. V de la Constitución de Puerto Rico establece que "[e]l Tribunal Supremo adoptará reglas para la administración de los tribunales las que estarán sujetas a las leyes relativas a ... **personal...**, y a otras leyes aplicables en general al gobierno". (Énfasis

nuestro.) Art. V, Sec. 7, Const. P.R., L.P.R.A. Tomo 1. A su vez, la Asamblea Legislativa promulgó la Ley Núm. 64 del 31 de mayo de 1973, 4 L.P.R.A. Sec. 521, *et seq.*, conocida como la *Ley de personal de la Rama Judicial*, con el propósito de facultar a la Rama Judicial para que adopte reglas que rijan la administración de su personal y para crear un sistema de personal autónomo que responda a sus necesidades.

Al amparo de los referidos estatutos, el 30 de junio de 1974, esta Curia adoptó las Reglas del Sistema de Personal de la Rama Judicial, 4 L.P.R.A. Ap. XII ("Reglas del Sistema de Personal"). Estas Reglas fueron promulgadas con el fin de regir efectivamente la administración y el funcionamiento del sistema de personal de la Rama Judicial, "basado en el principio del mérito, excelencia e idoneidad y sin discrimen de clase alguna". Preámbulo, Reglas del Sistema de Personal, *supra*.

Posteriormente, el 30 de agosto de 1974, aprobamos el Reglamento de la Administración del Sistema de Personal, 4 L.P.R.A. Ap. XIII. Según lo expusimos en el Art. 1 de la citada disposición legal, este reglamento aplica a todos los puestos en la Rama Judicial, siempre y cuando sus disposiciones no contravengan a las Reglas del Sistema de Personal, *supra*. 4 L.P.R.A. Ap. XIII, Art. 1. De tal manera, el Reglamento de la Administración del Sistema de Personal, *supra*, quedó supeditado a las Reglas del Sistema de Personal, *supra*.

Teniendo presente la estructura normativa del sistema autónomo de personal de la Rama Judicial, pasemos a analizar aquellas disposiciones que inciden sobre la retribución a otorgarse a un empleado ascendido, en aras de identificar si las secretarias ascendidas poseen algún derecho a cobrar el beneficio económico derivado del reconocimiento de los pasos o tipos intermedios que adquirieron al amparo de su antigua escala salarial, previo a ser ascendidas. Posteriormente, haremos lo propio con los reclamos homólogos instados por las secretarias originales.

IV.

## A. La normativa relativa a la compensación de un empleado ascendido

En la Rama Judicial la retribución conferida a un empleado por motivo de un ascenso está sujeta al Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, *supra*. Este articulado ha experimentado cambios significativos coetáneos al desarrollo de los hechos en controversia.

Previo a la implantación del Plan, el Art. 10.4(b), *supra*, disponía lo siguiente:

> También recibirán una retribución sobre el mínimo los funcionarios y empleados que sean ascendidos, **aumentándose el mismo número de pasos que sobre el mínimo de la escala anterior tuvieran.** (Énfasis nuestro.) 4 L.P.R.A. Ap. XIII, R.10.4(b) (versión de 21 de octubre de 1994).

De tal manera, el Art. 10.4(b), *supra*, antes de implantarse el Plan, permitía que un empleado ascendido

pudiese beneficiarse **del número de pasos obtenidos en su antigua escala salarial**, traspasando los mismos a su nueva escala salarial. Al así requerirlo, esta disposición legal iba más allá de exigir que se reconociese el monto del salario más alto alcanzado en la pasada escala salarial, permitiendo que el empleado ascendido se beneficiara del número de pasos adquiridos en la misma, los cuales en la nueva escala salarial siempre equivaldrían a un sueldo mayor a aquel que obtenía el empleado con el mismo número de pasos en su antigua escala salarial.

El 19 de marzo de 1999, a siete meses de instituirse el Plan, este Foro aprobó una Resolución enmendando el Art. 10.4(b), *supra*. Véase, Resolución del Tribunal Supremo de Puerto Rico Núm. EP-99-01. Esta enmienda alteró el texto del articulado indicado de la siguiente manera:

> Todo empleado que ascienda percibirá retribución al tipo mínimo de la escala correspondiente, excepto que si el aumento resultante fuere menor al equivalente a un paso sobre el sueldo del empleado en la escala donde estaba ubicada la clase de puesto antes del cambio, el mismo se aumentará y se ajustará al tipo inmediato superior al subsiguiente, de manera que el incremento a recibir sea mayor a lo que hubiera recibido de habérsele concedido un aumento de sueldo equivalente a un paso en la escala antes del cambio. 4 L.P.R.A. Ap. XIII, R.10.4(b) (2012).

Como resultado de lo anterior, el Art. 10.4(b), *supra*, ahora provee para que, luego de un ascenso, un empleado reciba una retribución inicial que sea correspondiente al tipo mínimo de esa nueva escala salarial. Cuando el salario devengado al amparo de su

antigua escala salarial resulta superior a este tipo mínimo, entonces procede ajustarle el salario concediéndole el paso o tipo intermedio que sea inmediatamente superior al equivalente del salario más alto que devengó bajo la pasada escala salarial. A diferencia del texto del Art. 10.4(b), *supra*, antes de enmendarse, el texto reformado sólo reconoce que, en caso de ascenso, el empleado continuará recibiendo, como mínimo, el salario más alto que devengó bajo su antigua escala salarial. Así, el lenguaje de esta enmienda, a diferencia del texto antes de ella, no reconoce los pasos adquiridos bajo la pasada escala salarial.

Ahora bien, los casos ante nos exigen examinar si la referida enmienda reglamentaria tuvo efectos retroactivos que afectasen los aumentos salariales recibidos por las secretarias ascendidas al amparo del Art. 10.4(b), *supra*, previo a ser enmendado. Ello con el fin de constatar si las secretarias ascendidas tienen un derecho a continuar devengando los aumentos recibidos antes de la enmienda en contención. Ante esta necesidad, discutamos brevemente las normas referentes al principio de retroactividad.

## B. El principio de retroactividad y la Resolución Núm. EP-99-01 del Tribunal Supremo de Puerto Rico

Según lo dispone el Art. 3 del Código Civil de Puerto Rico, las leyes no tendrán efecto retroactivo, a no ser que expresamente se provea lo contrario. 31 L.P.R.A. sec. 3. Aun cuando una ley tenga efecto retroactivo por disposición expresa a esos efectos, ésta no podrá

"perjudicar los derechos adquiridos al amparo de una legislación anterior". Íd.

En iguales términos, hemos reconocido que una ley podrá tener efectos retroactivos cuando surja de la intención legislativa, ya sea de forma expresa o tácita, el deseo del legislador de brindarle tal efecto. Clases A, B y C v. P.R.T.C., 183 D.P.R. 666, 679 (2011); Asoc. Maestros v. Depto. Educación, 171 D.P.R. 640, 648-649 (2007). "Ahora bien, ello no significa que podamos impartirle retroactividad a una ley a la ligera. La intención del legislador de darle efecto retroactivo a una ley debe desprenderse del estatuto.... [L]a retroactividad, por ser un acto excepcional, debe aparecer expresamente o surgir claramente del estatuto". Íd., pág. 649. Es por ello que hemos pautado que, "ante la omisión de un mandato expreso del legislador, solamente procede impartirle efecto retroactivo a una ley cuando es obvio y patente el propósito legislativo en casos en los cuales la aplicación retroactiva es necesaria para corregir un grave mal social y así poder hacer justicia". Torres Rodríguez v. Carrasquillo Nieves, 177 D.P.R. 728, 758 (2009).

Este principio de la irretroactividad de las leyes, consagrado en el Art. 3 del Código Civil, no se limita a los estatutos promulgados por la Asamblea Legislativa. Según lo hemos establecido, el principio de la irretroactividad de las leyes se extiende a la aplicación de los reglamentos administrativos y sus correspondientes

enmiendas. <u>Torres Rodríguez v. Carrasquillo Nieves</u>, *supra*, pág. 758.

En el caso de autos, resulta imperativo preguntarnos si la Resolución Núm. EP-99-01 de este Tribunal, promulgada el 19 de marzo de 1999, enmendó el Art. 10.4(b), *supra*, con la intención de otorgarle un efecto retroactivo. Al examinar la referida Resolución, encontramos que ésta, además de proveer el nuevo texto del Art. 10.4(b), *supra*, se limita a aseverar que la Resolución tendrá vigencia inmediata.[10] Resolución Núm. EP-

---

[10]En lo pertinente, la Resolución EP-99-01, *supra*, provee lo siguiente:

> Previa recomendación de la Directora Administrativa de los Tribunales, se enmiendan los siguientes artículos del Reglamento de la Administración del Sistema de Personal de la Rama Judicial:
>
> 9.3 Ajuste por Reasignación de Escala
>
> [...]
>
> 10.4 Retribución sobre el Mínimo
>
> b) Ascenso
>
> Todo empleado que ascienda percibirá retribución al tipo mínimo de la escala correspondiente, excepto que si el aumento resultante fuere menor al equivalente a un paso sobre el sueldo del empleado en la escala donde estaba ubicada la clase de puesto antes del cambio, el mismo se aumentará y se ajustará al tipo inmediato superior al subsiguiente, de manera que el incremento a recibir sea mayor a lo que hubiere recibido de habérsele concedido un aumento de sueldo equivalente a un paso en la escala antes del cambio.
>
> Esta Resolución tendrá vigencia inmediata....

99-01, *supra*, pág. 2. Nada se dice sobre la retroactividad de la enmienda a aquellos ascensos otorgados antes del 19 de marzo de 1999. De igual forma, la OAT, en un memorando circulado a todo el personal de la Rama Judicial, con el fin de explicar la enmienda en controversia, se circunscribió a afirmar que la Resolución bajo examen tendría "vigencia inmediata". Véase, Memorando Núm. 273, Mercedes Bauermeister, Directora Administrativa de los Tribunales, *Enmienda a los Artículos 9.3 (a) y (b), 10.4 (b) del Reglamento de la Administración del Sistema de Personal de la Rama Judicial*, 31 de marzo de 1999, pág. 2, Ap. CC-2008-1128, pág. 102. Nuevamente, hay silencio respecto a la retroactividad del Art. 10.4(b), *supra*, según fue enmendado.

Nuestros pronunciamientos jurisprudenciales ya han establecido que cuando un estatuto o un reglamento "[s]e limita sólo a ordenar su vigencia inmediata, sin expresión alguna que indique textualmente o de algún otro modo claro que la nueva disposición sería de aplicación retroactiva", corresponde determinar que la disposición legal bajo examen no fue promulgada con el fin de que tuviese efecto retroactivo alguno. Nieves Cruz ex rel. Hernández Nieves v. Universidad de Puerto Rico, 151 D.P.R. 150, 160 (2000). Véase, también, Asoc. Maestros v. Depto. Educación, *supra*, pág. 650.

A la luz de lo anterior, y en vista de que la Resolución Núm. EP-99-01 no ordena su aplicación

retroactiva de modo expreso, ni ello surge de modo claro alguno de esa Resolución, procede resolver que la enmienda al Art. 10.4(b), *supra*, sólo aplica prospectivamente a aquellos ascensos que fueron conferidos luego del 19 de marzo de 1999, fecha de efectividad de la Resolución bajo examen. Consecuentemente, todo ascenso conferido antes del 19 de marzo de 1999, quedará sujeto al texto del Art. 10.4(b), *supra*, antes de éste quedar enmendado por la Resolución Núm. EP-99-01.

A la luz de lo anterior, pasemos a examinar si las secretarias ascendidas antes del 19 de marzo de 1999, poseen un derecho a recibir un salario dentro de su nueva escala salarial que reconozca el beneficio económico que derivaron del número de pasos o tipos intermedios que le fueron otorgados en su antigua escala salarial.

**C. El derecho reglamentario de las secretarias ascendidas a que su salario refleje el número de pasos o tipos intermedios alcanzados en su antigua escala salarial**

En el caso de autos, las secretarias ascendidas arguyen que poseen un derecho a cobrar el beneficio económico derivado de los pasos o tipos intermedios que alcanzaron antes de implantarse el Plan, producto de los ascensos que recibieron al amparo del Art. 10.4(b), *supra*, antes de éste ser enmendado. Les asiste la razón.

Los ascensos conferidos a las secretarias ascendidas quedaron sujetos al texto del Art. 10.4(b), *supra*, antes de éste ser enmendado por la Resolución Núm. EP-99-01. Como resultado de lo anterior, la OAT actuó correctamente

cuando, previo a implantar el Plan, le reconoció a las secretarias ascendidas aquellos pasos o tipos intermedios que habían alcanzado bajo su antigua escala salarial. Ello es así debido a que el estado de Derecho al momento de otorgarse los ascensos de las secretarias ascendidas - entiéndase, el Art. 10.4(b), *supra*, antes del 19 de marzo de 1999- así lo exigía.

Como tal, la OAT estaba obligada a respetar el Reglamento de la Administración del Sistema de Personal, *supra*. Ello, pues, es norma reiterada que el Estado viene obligado "a observar estrictamente las reglas que ... promulgue". T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 81 (1999), citando a, García Cabán v. U.P.R., 120 D.P.R. 167, 175 (1987). Véanse, también: Torres v. Junta Ingenieros, 161 D.P.R. 696, 712 (2004); Montoto v. Lorie, 145 D.P.R. 30, 47 (1998); Díaz Llovet v. Gobernador, 112 D.P.R. 747 (1983); García v. Adm. del Derecho al Trabajo, 108 D.P.R. 53 (1978). A esos efectos, "[u]na vez se ha adoptado una norma, ... [el Estado] debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, los objetivos y la política pública que la forjaron". T-JAC, Inc. v. Caguas Centrum Limited, *supra*, pág. 81.

Según lo hemos interpretado en el pasado, la Rama Judicial no está exenta de cumplir con este principio rector. Véase, In re Hernández Torres, 164 D.P.R. 180, 191-192 (2005) (Per Curiam) ("Es principio reiterado de

derecho administrativo que cuando una agencia promulga un reglamento, por imperativo del debido proceso de ley, está obligada a seguirlo y no queda a su arbitrio reconocer o no los derechos que se establecen en éste.")

En lo que concierne a las secretarias ascendidas, el Art. 10.4(b), antes de ser enmendado, continuó siendo el estado de Derecho operante, aun después de implementarse el Plan en agosto de 1998. Lo anterior se debe a que, cuando examinamos la normativa aplicable, encontramos que el referido articulado no es incompatible con el Plan y puede coexistir junto a éste.[11] Consecuentemente, la aplicación retroactiva del Plan a los ascensos provistos antes de agosto de 1998 no afectó el reconocimiento de los pasos adquiridos por las secretarias ascendidas cuando éstas se desempeñaban como secretarias auxiliares, una vez fueron promovidas al puesto de secretarias de servicios de sala.

---

[11]Al contrario, somos del criterio que el Plan está supeditado al Reglamento de la Administración del Sistema de Personal, *supra*, el cual, a su vez, está sujeto a las Reglas del Sistema de Personal, *supra*. Incluso, los memorandos emitidos por la OAT para implantar el Plan, tampoco articulan prohibición alguna en torno a la coexistencia del texto del Art. 10.4(b), *supra*, previo a ser enmendado, y la implantación del Plan. Véanse: Memorando Núm. 80, Directora de la OAT, *Implantación del Nuevo Plan de Clasificación y Retribución*, 2 de septiembre de 1998; Memorando Núm. 33, Directora Interina de la OAT, *Norma de Ascenso para el Plan de Clasificación de la Rama Judicial aprobado el 1 de julio de 1998*, 2 de agosto de 1999; Memorando Núm. 148, Directora de la OAT, *Procedimiento ante el Comité de Revisión del Nuevo Plan de Clasificación y Retribución que Entró en Vigor el 1 de julio de 1998*, 1 de diciembre de 1998.

No fue sino hasta el 19 de marzo de 1999 que se enmendó el Art. 10.4(b), *supra*. Debido a que la Resolución que facultó esta enmienda no dispuso expresamente la retroactividad de la misma, las secretarias ascendidas no quedaron sujetas al texto del Art. 10.4(b), *supra*, según éste fue enmendado en el 1999. Como tal, hasta la fecha, dichos ascensos deben ser examinados a la luz del texto del mencionado articulado, según éste quedó configurado antes de emitirse la Resolución Núm. EP-99-01.

Cuando así procedemos, encontramos que las secretarias ascendidas tienen un derecho reglamentario a que se les reconozca en la escala salarial a la cual fueron ascendidas antes de implantarse el Plan, todos aquellos pasos que habían alcanzado en su pasada escala salarial. En otras palabras, el Art. 10.4(b), *supra*, antes de ser enmendado en el 1999, les reconoce a las secretarias ascendidas un derecho concreto a reclamar en su nueva escala salarial los pasos –y no sólo los salarios máximos– que alcanzaron en su antigua escala salarial.

### D. El error administrativo

Ahora bien, la OAT arguye que las secretarias ascendidas no poseen un derecho a los pasos que les fueron reconocidos en su nueva escala salarial. Para ello, razona que la implantación del Plan sin la debida enmienda al Art. 10.4(b) del Reglamento de la Administración del Sistema de Personal, *supra*, constituyó un mero error

administrativo, el cual no crea derecho alguno ni impide la corrección del mismo. No le asiste la razón.

Hemos sido consistentes en aseverar que, como norma general, un error administrativo no crea un estado de Derecho que obligue a un cuerpo administrativo ni impida su corrección. González v. E.L.A., 167 D.P.R. 400, 413 (2006); Santiago Declet v. Depto. de la Familia, 153 D.P.R. 208, 218 (2001); Magriz v. Empresas Nativas, 146 D.P.R. 63, 71 (1997); Franco v. Mun. de Cidra, 113 D.P.R. 260, 262 (1982). Sin embargo, es preciso tener presente que esta norma no aplica de forma automática ante su mera invocación. Más bien, y según lo hemos intimado en el pasado, esta doctrina sólo es aplicable en aquellos casos en los cuales la agencia cometa una actuación que sea **incorrecta**, **ilegal o *ultra vires***. Véanse: González v. E.L.A., *supra*, págs. 417-418; Camacho Torres v. Adm. para el Adiestramiento de Futuros Empresarios, 168 D.P.R 66, 95 (2006); Magriz v. Empresas Nativas, *supra*, pág. 71. En apoyo a lo anterior, es meritorio examinar brevemente diferentes circunstancias, en las cuales hemos encontrado que determinado cuerpo administrativo incurrió en un error compatible con la doctrina bajo análisis. Veamos.

Al amparo de la doctrina del error administrativo fue que en González v. E.L.A., *supra*, determinamos que unos confinados que recibieron libertad bajo supervisión electrónica, a pesar de que la Ley Núm. 49-1995 expresamente los excluía de disfrutar el referido

beneficio por haber sido convictos por el delito de asesinato, no podían reclamar un derecho a su excarcelación, **ya que la agencia les había conferido dicho estado libertario en contra de la ley**. En iguales términos, en Camacho Torres v. Adm. para el Adiestramiento de Futuros Empresarios, *supra*, resolvimos que un empleado que fue reinstalado por su agencia en su antiguo puesto de carrera, luego de culminar su nombramiento de confianza, no podía reclamar un derecho a la referida reinstalación por ésta **constituir una concesión *ultra vires* para la cual la agencia no tenía autoridad en ley para otorgarla**.

A su vez, en Infante v. Tribl. Examinador de Médicos, 84 D.P.R. 308 (1961), dispusimos que la admisión equivocada por la Junta de Médicos Examinadores de Puerto Rico del señor Infante a un examen de reválida, para ejercer la profesión de la medicina en Puerto Rico, cuando éste no tenía un diploma de una escuela de medicina **que cumpliese con los requisitos de acreditación exigidos por nuestro ordenamiento**, no le otorgaba a éste un acceso a futuros exámenes de reválida, **ya que la Junta no tenía autoridad en ley** para reconocer a su escuela de medicina como una entidad debidamente acreditada que le confiriese la referida admisión.

Por otra parte, en E.L.A. v. Rivera, 88 D.P.R. 196, 198-199 (1963), indicamos que la concesión de un permiso ilegal no impedía su posterior corrección, por lo que ordenamos a una demandante a demoler una verja que había

construido **en contra de los reglamentos de la Junta de Planificación**, pero por virtud del consejo y la autorización de un oficial de permisos de la referida agencia. Asimismo, en <u>Del Rey v. J.A.C.L.</u>, 107 D.P.R. 348 (1978), este Tribunal dispuso que la otrora Administración de Reglamentos y Permisos, a pesar de haber conferido a ciertos moteles unos permisos de uso **que no procedían en derecho**, había cometido un error administrativo, el cual no obligaba a la agencia a conferir un permiso análogo a un motel que ahora invocaba dichos precedentes para recibir igual trato ilegal.

Según se deduce de la exposición que antecede, la cual constituye una muestra del universo amplio de casos que atienden la doctrina bajo examen, resulta forzoso concluir que no cabe hablar de la corrección de un error administrativo y de sus consecuencias legales si no se establece que la agencia en controversia ha procedido de forma contraria a nuestro ordenamiento legal. En otras palabras, la doctrina del error administrativo sólo queda activada ante un acto anterior de la agencia que pueda ser caracterizado como *ultra vires*, **incorrecto o ilegal**.

Aplicando la normativa explicada al caso de autos, encontramos que la OAT, al reconocer a las secretarias ascendidas al momento de implantar el Plan de 1998 aquellos pasos que habían adquirido en su antigua escala salarial, no actuó de forma *ultra vires*, ilegal o incorrecta. Al contrario, y como hemos explicado, el Art.

10.4(b) del Reglamento de la Administración del Sistema de Personal, *supra*, les garantiza los pasos en controversia. Además, esta garantía reglamentaria no es incompatible con las leyes y los reglamentos restantes del sistema de personal de la Rama Judicial y es superior en jerarquía al Plan de 1998.

Como resultado de ello, en el caso de autos resulta innecesario e impertinente aplicar la doctrina del error administrativo y sus consecuencias jurídicas.[12] Distinto hubiese sido el caso si la OAT hubiese conferido un beneficio a las secretarias ascendidas, el cual no correspondía en Derecho. En tal supuesto sí correspondería

---

[12]Amerita señalar que en <u>Santiago Declet v. Depto. de la Familia</u>, *supra*, págs. 218-220, establecimos que cuando una agencia comete un error al implantar un nuevo plan de clasificación y retribución, este error no crea derechos adquiridos ni impide que se rectifique el mismo. "Así, en relación con los planes de clasificación o retribución, un empleado no puede ampararse en un error administrativo para reclamar la aplicación de una disposición reglamentaria que le resulte más ventajosa". Íd., pág. 218.

No obstante, el caso citado es distinto en su naturaleza a los casos que nos ocupan. A diferencia de la controversia surgida en los casos ante nos, en <u>Santiago Declet v. Depto. de la Familia</u>, *supra*, sí existía un error administrativo, a saber: la adscripción de una clase de puesto a una escala retributiva incorrecta. Además, es imperativo tener presente que los hechos desarrollados en ese caso surgieron al amparo de la Ley de Retribución Uniforme de 1979 y el Reglamento de Retribución Uniforme de la Oficina Central de Administración de Personal. Ante ello, el análisis empleado en este caso no aplica automáticamente a las controversias que surjan al amparo de las leyes y los reglamentos que rigen el sistema de personal de la Rama Judicial. Tampoco existe similitud alguna entre las disposiciones legales invocadas en ambos casos.

hablar sobre un error administrativo y su justificada corrección.

No obstante, ese no es el caso ante nos. Aquí la OAT reconoció a las secretarias ascendidas unos pasos alcanzados en su pasada escala retributiva, según lo exigía -y aún lo exige- el Reglamento de Administración del Sistema de Personal, *supra*. Este proceder no era contrario al Derecho. Consecuentemente, no es correcto argumentar que la OAT incurrió en un error administrativo. Ante ello, resulta forzoso concluir que las secretarias ascendidas poseen un derecho a que se les reconozca en su nueva escala salarial aquellos pasos que alcanzaron al amparo de su antigua escala salarial, sin importar que posterior a su ascenso se implantara el Plan de 1998.

Teniendo presente lo anterior, debemos auscultar si las secretarias originales también pueden articular exitosamente un derecho reglamentario a devengar en su nueva escala salarial el beneficio económico derivado de los pasos o tipos intermedios que alcanzaron en su antigua escala salarial, antes de implantarse el Plan.

V.

**A. El derecho de las secretarias originales a devengar el beneficio económico derivado del reconocimiento de los tipos o pasos intermedios alcanzados en su antigua escala salarial**

Las secretarias originales arguyen que poseen un derecho a cobrar en su nueva escala salarial el equivalente económico derivado del número de pasos que

adquirieron antes de implantarse el Plan de Clasificación y Retribución de 1998. No les asiste la razón.

En el sistema autóctono de personal de la Rama Judicial, el Art. 9 del Reglamento de Administración del Sistema de Personal, *supra*, regula todo aquello concerniente a los ajustes que habrán de efectuarse en la retribución del personal de la Rama Judicial cuando se implante un nuevo plan de clasificación y retribución. En particular, el Art. 9.1 del referido Reglamento dispone acerca de los ajustes que habrán de realizarse en la retribución de los empleados incumbentes en los puestos existentes bajo las distintas clases del plan de clasificación y retribución de la Rama Judicial. Al momento de implantarse el Plan, el referido articulado proveía lo siguiente:

> Al establecerse el Plan de Retribución, el sueldo a fijarse al incumbente de cada puesto se ajustará conforme a lo siguiente:
>
> a) El sueldo del incumbente que sea menor que el tipo mínimo fijado para la clase, será aumentado automáticamente hasta dicho tipo mínimo.
>
> b) El sueldo del incumbente que corresponda al mínimo o [a] alguno de los tipos intermedios de la escala fijada para la clase a la cual se asigna su puesto permanecerá inalterado.
>
> c) El sueldo del incumbente que quede dentro de la escala fijada, pero que no coincida con uno de los tipos intermedios, será ajustado al tipo que sigue inmediatamente.
>
> d) El sueldo del empleado que sea mayor que el máximo de la escala correspondiente a su puesto permanecerá inalterado, a menos que una revisión ulterior aumente dicha escala.

> Art. 9.1, 4 L.P.R.A. Ap. XIII (versión de 21 de octubre de 1994).

Al examinar con detenimiento el Art. 9.1, *supra*, encontramos que nada en las leyes o en los reglamentos de la Rama Judicial les adjudica a las secretarias originales un derecho a reclamar que su nuevo salario sea ajustado, conforme a los pasos que alcanzaron en sus escalas salariales antes de implantarse el Plan. Al contrario, el articulado citado sólo les reconoce un derecho a que, al implantarse el nuevo plan, se les adjudique un salario, como mínimo, igual al salario que devengaban al amparo de la escala salarial suplantada.

Una simple lectura del texto del Art. 9.1, *supra*, confirma lo anterior al establecer que al momento de implantarse el Plan de 1998, todo sueldo de un incumbente debía ser elevado al tipo mínimo de la escala salarial aplicable a su puesto. Si el salario del empleado incumbente antes de implantarse el Plan era igual al tipo mínimo o a alguno de los tipos intermedios de la nueva escala salarial, entonces el mismo quedaba inalterado. Ahora bien, cuando el salario anterior era mayor que el nuevo tipo mínimo, pero no coincidía con uno de los nuevos tipos intermedios, entonces éste era ajustado al tipo intermedio siguiente superior, de forma tal que el empleado incumbente continuase ganando un salario igual o superior al salario suplantado. Finalmente, si el empleado devengaba un sueldo que era superior al tipo máximo de la nueva escala salarial, entonces éste quedaba inalterado.

Aplicando la disposición reglamentaria analizada al caso de autos, encontramos que las empleadas originales no tienen un derecho a que se les reconozca en su nueva escala salarial el número de pasos que habían alcanzado bajo la escala salarial existente antes de implantarse el Plan de 1998. Al amparo del texto del Art. 9.1, *supra*, resulta forzoso concluir que las secretarias originales sólo tenían derecho a que, al implantarse el Plan de 1998, se les reconociese en su nueva escala salarial una retribución igual o mayor al salario que devengaban bajo la escala salarial anterior; ello en función a las particularidades antes detalladas.

Distíngase lo anterior del caso de las secretarias ascendidas, las cuales sí pueden descansar en una disposición reglamentaria —el Art. 10.4(b), *supra*, antes de ser enmendado en el 1999— que les reconoce un derecho a que en caso de experimentar un ascenso, su nuevo sueldo fuese ajustado de tal manera que éste reflejara los pasos adquiridos por las secretarias ascendidas al amparo de su antigua escala salarial, no importando que luego de los ascensos entrara en vigor el Plan de 1998.

En resumidas cuentas, y a la luz de todo lo anterior, no cabe hablar de un derecho reglamentario de las secretarias originales a que sus salarios posteriores bajo el Plan de 1998 integrasen el número de pasos alcanzados en su pasada escala salarial.

VI.

Según lo discutido hasta el momento, queda establecido que las secretarias originales no pueden reclamar un derecho reglamentario al número de pasos que recibieron antes de implantarse el Plan de Clasificación y Retribución de 1998. Asimismo, las secretarias originales tampoco pueden articular semejante expectativa respecto al aumento salarial que la Junta les otorgó en aras de equiparar su salario al de las secretarias ascendidas.

Ahora bien, ello no priva a las secretarias originales de un remedio en Derecho. Habiendo resuelto que las secretarias ascendidas poseen un reclamo válido a los pasos en controversia, resta examinar si se debe equiparar el sueldo de las secretarias originales con aquel devengado por las secretarias ascendidas. Ello al amparo del derecho constitucional y reglamentario a *igual paga por igual trabajo*.

Como antesala a nuestro análisis, resulta necesario examinar el derecho a *igual paga por igual trabajo*, según esta garantía es consagrada en los reglamentos de personal de la Rama Judicial y por nuestra Constitución, todo dentro del contexto de la normativa aplicable a los planes de clasificación y retribución de esta rama de gobierno.

**A. La normativa reglamentaria relativa al Plan de Clasificación y Retribución y el principio de *igual paga por igual trabajo***

A lo largo y ancho de los Reglamentos de Personal de la Rama Judicial, permea el principio constitucional de

*igual paga por igual trabajo*. Ello con especial énfasis en aquellas disposiciones relativas a la creación e implementación de los planes de clasificación y retribución de la Rama Judicial. Abundemos.

La Regla 5 de las Reglas del Sistema de Personal, *supra*, ordena la creación de un Plan de Clasificación para la Rama Judicial. 4 L.P.R.A. Ap. XII, R.5. Dicha regla provee que el Plan de Clasificación tendrá clases, las cuales agruparán puestos de trabajo con deberes y responsabilidades determinadas. Íd. En la creación de estas clases, resulta imperativo que se agrupen "aquellos puestos con deberes sustancialmente similares en cuanto a responsabilidad, complejidad y autoridad dentro de la estructura funcional de la Rama Judicial y que para desempeñar los mismos se requieren requisitos análogos de preparación, experiencia, conocimientos, habilidad y la misma capacidad para la mejor ejecución de esos deberes". Íd. A su vez, el Plan de Clasificación debe procurar "**que se puedan aplicar con equidad las mismas escalas de retribución a trabajos sustancialmente similares**". (Énfasis nuestro.) Íd.

El Art. 5.1 del Reglamento de Administración del Sistema de Personal, *supra*, complementa lo anterior al especificar que "**[e]l principio constitucional de igual paga por igual trabajo sólo puede conseguirse si se analizan adecuadamente los deberes y responsabilidades de cada puesto**". (Énfasis nuestro.) 4 L.P.R.A. Ap. XIII, Art.

5.1. El referido articulado añade que, "[a] estos efectos, el Juez Presidente o la persona en quien él delegue, hará que se determinen los deberes y responsabilidades de todos los puestos en la Rama Judicial y los agrupará en forma sistemática dentro de clases que constituirán el Plan de Clasificación". Íd. Estas clases, a su vez, "proveerá[n] una base sólida **para establecer y mantener un plan de retribución equitativo... y para proveer normas de cualificación para empleo y ascenso justas y uniformes**". (Énfasis nuestro.) Íd. En consecución de esos fines, el Plan de Clasificación tendrá "una especificación escrita para cada clase de puesto existente en la Rama Judicial, una tabla de niveles de responsabilidad que refleja el nivel, en términos de complejidad, responsabilidad, y otros elementos de clasificación de cada clase y la reglamentación para la efectiva implantación y administración del plan". Íd.

Por otra parte, la Regla 11 de las Reglas del Sistema de Personal, *supra*, complementa el Plan de Clasificación con la creación de un Plan de Retribución. En específico, la citada disposición legal provee lo siguiente:

> El Juez Presidente establecerá un Plan de Retribución que cubra todos los puestos de la Rama Judicial.... Mediante este Plan se fijarán las escalas de retribución en las cuales se asignarán todas las clases de puestos incluidos en el Plan de Clasificación. Estas escalas de retribución consistirán de un tipo mínimo y un máximo y varios tipos intermedios **a determinarse en forma justa y equitativa para el mejoramiento económico del personal.** El personal de la Rama Judicial será retribuido conforme a lo establecido en el

Plan de Retribución. (Énfasis nuestro.) 4 L.P.R.A. Ap. XII, R.11.

El Reglamento de Administración del Sistema de Personal, *supra*, añade que el Plan de Retribución deberá estar "[a]corde con el principio establecido de que **los empleados deben recibir retribución justa** que guarde proporción con los servicios que prestan... **[y] en plena armonía con** el Plan de Clasificación **y con el principio constitucional de igual paga por igual trabajo**". (Énfasis nuestro.) 4 L.P.R.A. Ap. XIII, Art. 10.1. A su vez, el mismo estará compuesto de tres elementos fundamentales, a saber: (1) la estructura de todas las escalas de retribución que sean necesarias, las cuales tendrán un tipo mínimo, pasos intermedios y un tipo máximo de retribución; (2) una lista de asignaciones de clase a las de retribución correspondientes; y (3) las reglas necesarias para la implantación, la operación y el mantenimiento del Plan de Retribución. Íd., Art. 10.1(a).

Fue al amparo de este andamiaje reglamentario que el entonces Juez Presidente, José Andréu García, aprobó el Plan de Clasificación y Retribución de 1998 ("el Plan"). Mediante éste, se delinearon doce (12) escalas de sueldo enumeradas consecutivamente, las cuales, en el conglomerado, contienen 118 clases de puestos. Véase, Informe Narrativo del Plan de Clasificación para el Servicio Uniforme de la Rama Judicial, págs. 2 y 3 ("Informe Narrativo"). Cada escala de sueldo contiene un tipo mínimo, diez tipos intermedios y un tipo máximo. Íd.

A su vez, el Plan procura conceder incrementos horizontales de salarios a medida que se progresa de una escala retributiva a otra. Id., pág. 3. En iguales términos, el Plan persigue otorgar incrementos verticales de sueldo dentro de cada escala salarial. Íd. Al ubicar a un empleado dentro de este sistema retributivo, resulta imperativo que "todo el personal quede ubicado en un tipo en la escala retributiva [que sea] igual o mayor a su salario actual". Íd., pág. 4.

Finalmente, amerita indicar que esta estructura retributiva fue erigida sobre "el principio de mérito como base fundamental de una administración pública efectiva y eficiente", al igual que "el reconocimiento del esfuerzo individual y colectivo del personal **en un marco de equidad y justicia**". (Énfasis nuestro.) Íd., págs. 1-2 y 4. Ante ello, el Plan tiene como norte "la integración de una política que provea **un trato justo y equitativo** a todos los empleados de la Rama Judicial". (Énfasis nuestro.) Íd., pág. 4.

A la luz de todo lo anterior, resulta evidente que los reglamentos de personal de la Rama Judicial y el Plan de 1998, reconocen que la clasificación y retribución de puestos en la Rama Judicial deben responder, en todo momento, al principio de mérito, a la equidad y la justicia, **y al principio constitucional de *igual paga por igual trabajo*.** Con ello en mente, y entendiendo que las secretarias originales erigen su causa de acción sobre la

palestra de este principio, es necesario brindarle contenido al mismo mediante un estudio sereno del derecho constitucional a *igual paga por igual trabajo*.

### B. El derecho constitucional a *igual paga por igual trabajo*

El Art. II, Sec. 16 de la Constitución de Puerto Rico indica que "[s]e reconoce el derecho de todo trabajador a recibir ... igual paga por igual trabajo". Art. II, Sec. 16, Const. P.R. L.P.R.A. Tomo 1. En Mercado Vega v. U.P.R., *supra*, págs. 284-285, al expresarnos acerca de este derecho constitucional, expusimos que la **principal** inspiración de la Convención Constituyente al adoptar "este mandato de justicia obrera fue la realidad imperante en la época de su adopción cuando a las mujeres con frecuencia se les pagaba menos aunque rindieran la misma o mayor labor que el hombre". De tal manera, reconocimos el interés de los padres de la Constitución de Puerto Rico por equiparar la paga que reciben las mujeres en comparación con los hombres, cuando ambos realizan labores que son iguales en su naturaleza.

Ahora bien, esta no es la única motivación detrás de la adopción de la garantía de rango constitucional bajo examen. Nuestra jurisprudencia también ha reconocido una segunda manifestación de este derecho constitucional. En concreto, en decisiones anteriores, en las cuales hemos examinado determinados reclamos relacionados con los planes de clasificación y retribución de otras ramas de gobierno, hemos sido precisos en disponer que los

principios de equidad y justicia en la fijación de los salarios de nuestros empleados públicos, instaurados en los reglamentos y en las leyes de personal de dichas ramas hermanas, constituyen una política pública que se deriva, y constituye una aplicación práctica, del Derecho Constitucional a recibir *igual paga por igual trabajo*.

Así, en <u>Guzmán Rosario v. Depto. de Hacienda</u>, establecimos lo siguiente:

> La Constitución del Estado Libre Asociado de Puerto Rico reconoce el derecho de todo trabajador a recibir igual paga por igual trabajo. En armonía con esta expresión de nuestros constituyentes, en Puerto Rico existe una clara política pública que pretende brindar a los trabajadores del servicio público un tratamiento equitativo y justo en la fijación de sus sueldos y demás formas de retribución. De hecho, este Tribunal ha reconocido el alto interés público que reviste la legislación reguladora del empleo público y en especial la que reglamenta la retribución salarial. (Citaciones internas omitidas.) 147 D.P.R. 46, 52-53 (1998).

En iguales términos, en <u>Nigaglioni v. Depto. De Salud</u>, *supra*, pág. 190, volvimos a reiterar que

> [n]o hay duda que en Puerto Rico existe una clara política pública que pretende brindar a los trabajadores un tratamiento equitativo y justo en la fijación de su salario y demás formas de retribución. **Esta política pública, a su vez, se enmarca en el derecho de todo trabajador a recibir igual paga por igual trabajo**, que consagra la Constitución del Estado Libre Asociado de Puerto Rico". (Énfasis nuestro.)

A su vez, en <u>Ortiz Ortiz v. Depto. de Hacienda</u>, *supra*, págs. 220-221, establecimos que el área de la retribución del empleado público es una de las más importantes para facilitar la aplicación del principio de

mérito, el cual procura la mayor uniformidad, equidad y justicia en la administración pública. Igualmente, añadimos que el principio de mérito es cónsono con el principio constitucional de igual paga por igual trabajo, el cual busca propiciar la uniformidad, la equidad y la justicia en la fijación de los sueldos de todos los empleados del servicio público. Íd.

Asimismo, en Santiago Declet v. Depto. de la Familia, *supra*, expusimos nuevamente esta modalidad del derecho constitucional bajo examen, al disponer que la extensión de los beneficios reconocidos a un empleado al amparo de un plan de clasificación y retribución son extensivos a todos los otros empleados igualmente situados. Ello, pues, "[d]e este modo se reconoce en términos prácticos el Derecho Constitucional de todo trabajador de recibir igual paga por igual trabajo". Íd., pág. 219.

Por último, es propicio apuntalar que este principio no es óbice para la otorgación de salarios distintos a personas clasificadas en la misma escala salarial, siempre y cuando exista **una justificación objetiva** para la diferencia de compensación ante la igualdad de la labor rendida. Esta justificación objetiva puede fundarse, a modo de ejemplo, en los siguientes factores: los años de servicio que ha prestado un empleado; la demanda u oferta en el mercado de trabajo; las habilidades y destrezas necesarias para realizar el trabajo; y, el grado de complejidad de la tarea realizada, entre otros factores.

Aulet Lebrón v. Depto. de Servicios Sociales, *supra*, pág. 44; Mercado Vega v. U.P.R., *supra*, pág. 284.

A la luz de todo lo anterior, podemos concluir que nuestra jurisprudencia ha reconocido diáfanamente que los reglamentos y las leyes de personal, al exigir que la justicia y la equidad sean los criterios rectores en la fijación de los salarios de los empleados públicos y en la creación e implementación de planes de clasificación y retribución, viabilizan de forma práctica el derecho constitucional **a que todo trabajador** devengue igual salario por igual labor, sin distinción del sexo del empleado. Sin lugar a dudas, es posible constatar que la referida garantía de rango constitucional, además de prohibir la práctica de brindarle salarios inferiores a una mujer, a pesar de ésta rendir un trabajo igual en su naturaleza que un hombre, también cobija dentro de su ámbito protector a todo trabajador –hombre o mujer– que reciba un salario injusto en comparación con los salarios obtenidos por sus pares, cuando ambos laboren en tareas y funciones de igual naturaleza y no exista criterio objetivo alguno que justifique tal disparidad.[13]

Descansando en lo anterior, pasemos a examinar si las secretarias originales poseen un derecho reglamentario a

[13]Sostenemos lo anterior en las expresiones vertidas en el Diario de Sesiones de la Asamblea Constituyente, en el cual se expresó que el derecho bajo examen "interesa evitar discrímenes de una parte e irritaciones de otra, producidas cuando la compensación diferente *carece de justificación* frente a la igualdad de la labor rendida". (Énfasis en el original.) Mercado Vega v. U.P.R., *supra*, pág. 284.

recibir *igual paga por igual trabajo* en comparación con las secretarias ascendidas.

### C. El derecho de las secretarias originales a la equiparación solicitada

En los recursos ante nuestra consideración, encontramos que las secretarias ascendidas y las secretarias originales ocupan el mismo puesto dentro del Plan de Clasificación y Retribución de 1998: secretarias de servicios de sala. A pesar de ello, las secretarias ascendidas devengan un salario mayor que aquel devengado por las secretarias originales. Ello como resultado de la simultánea aplicación del Art. 10.4(b) del Reglamento de Administración del Sistema de Personal, *supra*, y la entrada en vigor del Plan de 1998.

Las secretarias originales se oponen a esta diferencia en sueldo por entender que merecen recibir una compensación basada en los mismos términos que aquellos utilizados para fijar el salario de las secretarias ascendidas. A esos efectos, solicitan que el sueldo fijado en la escala salarial implantada con el Plan de 1998, refleje el número de pasos alcanzados antes de implantarse el referido Plan, para así recibir un trato igual a aquel recibido por las secretarias ascendidas. Añaden que tal proceder es imperativo ante el hecho de que ellas poseen más años de experiencia que las secretarias ascendidas en el desempeño del cargo que ocupan y que no reconocerle los pasos alcanzados antes de implantarse el Plan constituye

una violación al principio reglamentario de *igual paga por igual trabajo*. Les asiste la razón.

Según lo indicamos anteriormente, los reglamentos de personal le ordenan a la Rama Judicial que, al crear e implantar sus planes de clasificación y retribución, observen la equidad, la justicia, el principio de mérito y la aplicación efectiva del derecho constitucional a *igual paga por igual trabajo*. En específico, estos reglamentos disponen que un empleado habrá de recibir una retribución justa que guarde proporción con los servicios que presta y que esté en plena armonía con el principio constitucional de *igual paga por igual trabajo*, reconociendo siempre el esfuerzo individual y colectivo del empleado dentro de un marco de equidad y justicia.

Al otorgarle contenido a esta exigencia reglamentaria, a la luz del principio constitucional de *igual paga por igual trabajo*, encontramos que nuestra jurisprudencia ha resuelto que la política pública de brindarle a los trabajadores públicos un tratamiento equitativo y justo en la fijación de su salario y demás formas de retribución, resulta ser una aplicación práctica del derecho constitucional bajo examen. Más aun, hemos sido diáfanos en disponer que, como corolario del derecho constitucional a recibir *igual paga por igual trabajo*, corresponde otorgar salarios distintos a personas que ejercen las mismas funciones, cuando ello **se justifique**

**objetivamente** en los méritos o los años de servicio prestados por un empleado.

Es en función de esta normativa que corresponde equiparar el salario de las secretarias originales con aquél devengado por las secretarias ascendidas, mediante el ajuste del sueldo actual de las secretarias originales a través del reconocimiento del beneficio económico que éstas hubiesen devengado si se les hubiese reconocido el número de pasos alcanzados en su escala salarial antes de implantarse el Plan de 1998. Proceder de otra manera constituye una violación del principio reglamentario y constitucional de *igual paga por igual trabajo*, el cual exige que en la fijación del sueldo de las secretarias originales se respete el principio de mérito y se le otorgue un salario justificado objetivamente sobre la base de sus méritos y sus años de experiencia como secretarias de servicios de sala. Debido a que las secretarias ascendidas poseen un derecho reglamentario a que se les reconozca el número de pasos que habían alcanzado en su antigua escala salarial, y entendiendo que ese derecho ha creado una disparidad de sueldo entre las secretarias originales y ascendidas, la cual omite reconocer los años de servicios de las secretarias originales en función del principio de mérito -corolario del derecho a igual paga por igual trabajo- la OAT viene obligada a reconocerle a las secretarias originales en su nueva escala salarial, el beneficio económico que derivarían del reconocimiento del

número de pasos que habían alcanzado al amparo de su antigua escala salarial, antes de implantarse el Plan de 1998. Sólo así se cumple con el principio reglamentario y constitucional de *igual paga por igual trabajo*.

VII.

Por todo lo anterior, procede que la OAT les reconozca a las secretarias ascendidas en la escala salarial que les aplicaba luego de implantarse el Plan de 1998, **el número de pasos por mérito o años de servicios** que habían alcanzado dentro de su antigua escala salarial, antes de ser ascendidas al puesto de secretarias de servicios de sala. Ello al amparo de su derecho a un debido proceso de ley y de cara al Art. 10.4(b) del Reglamento de Administración de Personal, *supra*. Igualmente, la OAT debe ajustar el salario de las secretarias originales peticionarias para que éste refleje el beneficio económico que éstas hubiesen recibido de habérseles reconocido en su nueva escala salarial el número de pasos que habían alcanzado en su antigua escala salarial, antes de implantarse el Plan de 1998. Ello en función de su derecho reglamentario a recibir *igual paga por igual trabajo*, y a ser remuneradas conforme al principio de mérito, a la justicia y a la equidad.

En el caso de las secretarias ascendidas, los beneficios aquí reconocidos habrán de tener efecto retroactivo a la fecha en la cual la OAT dejó de pagarles el salario que les correspondía en derecho una vez fueron

ascendidas al puesto de secretarias de servicios de sala. Respecto a las secretarias originales, éstas habrán de cobrar los beneficios aquí reconocidos de forma retroactiva a la fecha en la cual se implantó el Plan de 1998.

VIII.

En consideración a los fundamentos antes discutidos, se modifica la sentencia del Tribunal de Apelaciones y se ordena a la Junta a realizar los cómputos correspondientes para ajustar el salario de las secretarias ascendidas y las secretarias originales, acorde a los pronunciamientos que forman parte de esta Opinión.

Se dictará sentencia de conformidad.


                                        Luis F. Estrella Martínez
                                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Gladys Rivera Padilla y Otras; Carmen R. Cotto y Otras; Iraida Erazo Ortega y Sandra Rivera Bauzá<br><br>Recurridas<br><br>v.<br><br>Directora Administrativa de los Tribunales<br><br>Peticionaria | CC-2008-1128 | |
| Gladys Rivera Padilla, Iraida Erazo Ortega, María E. Miranda Pérez, María L. Trinidad Morales, Elsie M. Oliveras Martínez, Gladys Castillo Rodríguez, Minerva Colón Nieves, Ramonita Rivera Tarraza, Carmen M. Meléndez Pérez, Denise Marín Rodríguez, María del R. Carrión Vega, Sandra Rivera Bauzá, Elizabeth Mulero Maldonado y María del C. Barroso Hernández<br><br>Recurridas<br><br>v.<br><br>Directora Administrativa de los Tribunales<br><br>Peticionaria | Cons.<br><br><br><br><br><br><br><br><br><br><br><br>CC-2010-0620 | Certiorari |

SENTENCIA

San Juan, Puerto Rico, a 8 de agosto de 2013.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se modifica la sentencia del Tribunal de Apelaciones y se ordena a la Junta a realizar los cómputos correspondientes para ajustar el salario de las secretarias ascendidas y las secretarias originales, acorde a los pronunciamientos que forman parte de esta Opinión.

Notifíquese por teléfono, facsímil y por la vía ordinaria.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina. La Juez Asociada señora Rodríguez Rodríguez no intervino. El Juez Presidente señor Hernández Denton está inhibido.


                              Camelia Montilla Alvarado
                   Secretaria del Tribunal Supremo, Interina